Let me just be sure because Mr. Schultz is participating by phone. So Mr. Schultz, I just need you to acknowledge if you can hear us. Yes, Your Honors. Thank you. This is Evan Schultz. All right. Thank you. All right. Is it Diaz? Yes, Your Honor. Diaz. Diaz. You may proceed. Good morning, Your Honors. May I please accord? I'm here representing Javier Garza-Flores on an opposed motion to transfer Venya under 8 U.S.C. 1252b-5 to the Brownsville District Court under the novel hearing on his claim for citizenship, Your Honor. The main issue is whether the record as it is right now establishes a genuine issue of citizenship. The first thing that I believe that there is a misunderstanding from is in the fact that this is a case of acquired citizenship, Your Honor. And acquired citizenship is not the same as derivative citizenship. An acquired citizenship is someone like Senator Cruz who was born in Canada and acquired citizenship at birth through his U.S. citizen mother and arguably is a national born citizen that could be a president of the United States. On the other hand, a derivative citizenship is someone like Governor Schwarzenegger of me that was born in another country, became legal permanent resident, were given the privilege of naturalized U.S. citizens, and all doubts should be resolved when someone like that is on favor of the government since they are the ones that gave us the privilege to be in. And we cannot be presidents of the United States because we are not national born of the United States. In his brief, Your Honor, the government basically states that we have met our burden and it says to establish its own eligible derivative citizenship. On page 10 of the brief, they talk that the father of my client, which was born in 1975, so naturalized U.S. citizen. The fact is the naturalized citizen, they are identical, the certificates, if you look at them. But if you look at an acquired citizenship that has a double A certificate, and the double A certificate means that it's someone that acquired citizenship on the day that he was born. It was 1915. It was issued to him in 1970 because that's, he applied, back then he applied in 1969, and this is all in the record. He applied on September 15, 1969, paid $10, stated that he was residing in the United States in Brownsville, Texas, and was granted the certificate in 1970. That is five years before my client was born in 1974 in Mexico. The evidence, Your Honor, I believe shows on the record, and that is very well summarized, I believe, on the opinion by Judge Tipton. Mr. Flores was detained back on June of 2020 and charged with illegal reentry. That's when we filed this petition for review within the 30 days. And the case proceeded on the criminal case. On April 2021, his counsel in Corpus Christi went before the judge on a bench trial, and on the bench trial, the judge in December of 2021 issued a memorandum of order where basically he talks about the fact that both sides talk about derivative acquired interchangeably, but that they are not the same. And he finds that in that case, the government has the burden to prove beyond a reasonable doubt all the elements, including alienage, and based on the evidence on record, which included an affidavit from a sister of his father, of his father, which is dead, claiming that he was 59 years old when he was born, that he had been working in the United States since he was 10 years old, that he had a family with his wife because he was not married to my client's mother, that obtained certificates of citizenship, and he would go back and forth working as a laborer in the Brownsville area, in the Valley area, all his life. And that is exactly what the application for a certificate of citizenship that was submitted by his father in 1969. What is your understanding? Is that for multiple decades, he basically lived on the weekends in Mexico, but worked in the United States during the work week for literally decades? Yes, Your Honor, that is my understanding, but you know, that is not a unique situation for him. I mean, that is a unique, that's a very common practice. Oh, sure. No, I don't doubt that. I'm asking just about your client. I'm aware that that's extremely common. Oh, yes, Your Honor, that is what it is. And that's when they were, when the record says that I only resided for five months in 1940, which is in his application, probably that's when he moved up north to live maybe for four or five months. But during all this time, since he was 10 years old, according to his younger sister, he would come over to the United States and would work over in the fields as a laborer. Is the idea that he, at that time, or during most of his life, he resided in Mexico, but worked in the United States and stayed with relatives? He never resided in the United States, but was physically present? Yes, Your Honor, because the practice back then was to work at a ranch and stay at the ranch. And then they would go from- Oh, so you could stay at your workplace, is what you're saying. Yeah, you would stay at the workplace. You know, the social security records for farmer, for people that labor, they didn't start required until the 1985s. Before that, there was only the requirements that started, I believe, in the 1960s. And that is, after they worked so many hours in one place, there was a requirement. The fact is that they used to get paid, U.S. citizens and Mexican citizens that worked on the farms, they used to get paid in cash. And they would work at different places, which, that's what the statute requires, physical presence. When his father immigrated, when his father became an acquired citizen in 1915, the statute required that the father, whoever is deriving, he's acquiring the citizen, to have been residing. In 1954, as the government states in this brief, they changed it out to physical presence. And the physical presence means that you don't, it's what time you were in the United States. And as Judge Tipton says, it's not continuous, because there is a statute that says continuous for the case of born out of wedlock that requires 12 months of continuous, which is residing in the United States. Here, it's just during the period of 59 years, whether we believe that his father was physically present in the United States for 10 years. And I believe that the record shows that in many more ways, Your Honor. And the only thing is for this court to allow the case to get transferred to the district court in Brownsville, where we could present our evidence, we can request discovery, we can get the files of his half-siblings to obtain citizen through him, and be able to bring the sister, which would testify. How do you know? Because the government said, well, we don't have enough evidence, because it is all hearsay. Well, she knows where her brother was. There was a big family, and she knows that her brother was here, coming back and forth. This is a family that the father, the grandfather was born in 1892 in Latina, Texas, Brownsville. And, you know, when I tell these cases, I say, I just cannot imagine how things were back in 1892 in Texas. But it was just, I've been living there for 30 years, and it has changed a lot. Back then, they used to just go back and forth. And the reason that his father went back to, his grandfather went back to Mexico was because in 1915 of the war, World War I. So he goes back to Mexico. But he continues to come and work in the United States, because that's where they would pay them better. So is there any evidence in the record that would suggest that he did not meet the 10-year requirement? I know, I'm aware there's a lot of evidence that you have indicating that he was. I'm just wondering, what's the counter evidence? Is there anything? And I'll ask the government, of course, the same thing. There is no evidence, Judge, Your Honor. There is no evidence that he was in Mexico working. There is no evidence that he was going to school in Mexico. There was no evidence of any of that. I want to go back to your opening. You were talking about the difference between acquired citizenship and derivative citizenship. I'm personally interested in the topic, because I'm in the latter category. But why do you mention that here? Why is that legally relevant here? Because Your Honor, on the brief for the government, they cite naturalization cases. And they ask this court to take the same standard. So it's just the presumption that if it's derivative, tie goes to the government. But if it's acquired, tie goes to the citizen? Well, no. I mean, it's just that, first of all, the burden is not a summary. Summary judgment is not the standard. It's whether there is a material fact of citizenship. And that's why this court, if they found that there is a material fact about his citizenship, that it should be transferred to a lower court so that it can be litigated. And it is a very important right. I mean, we're talking about somebody. Wouldn't it be the same standard whether the dispute was over acquired citizenship at birth or derivative citizenship later in life? Well, the thing is that on the derivative citizenship cases, when there is doubt, they have been, the courts have said that they should be resolved in favor of the government. So when there is a doubt whether I'm eligible to become citizen, you know, they should have deference to the government that made the determination. You have case law saying that if it's about acquired, doubt should be resolved in favor of the person? Just the 14th Amendment, Judge, and the fact that it is on an acquired citizenship, you know. In acquired citizenship, you are saying that there are just two sources. That's, I believe, a Supreme Court case from 1898. I'm sorry. I'm just, I want to make sure I understand. You're saying there's case law that in a tie, benefit of the doubt goes to the government as to derivative. Are you saying there's no case law one way or the other when it comes to acquired? I'm sorry, Judge. I will be honest, Judge. I'm not the best person for knowing every case law. I'm not very good. Okay. That's all right. I'm just asking. This is the first time I come here. That's all right. So I will have to say I'm not sure. Okay. But your point is in the derivative fact pattern, we know tie goes to the government, but you can't necessarily assume that with acquired. That's your point. No, Judge. But when they talk about it on the brief, they say naturalization, you know, Congress, you know, sets the rules. I mean, this is not a naturalization case. And when the government refers to the fact that he was issued a naturalization certificate in 1970, that is not correct. He was issued a certificate of acquired citizenship, which is the same certificate that anybody that was born abroad, like, and I mentioned Senator Cruz because he was born in Canada, and he acquired citizenship through his mom. Now, his case is very different than my client's because his mom, I understand, went to school and had school records that showed that she was here. His father worked, was born in Latina in the 1800s in Texas and worked as a rancher here, and there is no records of his dad other than in the affidavit on the statement on his application that his father says, I lived here from 1892 to 1950, and then I came back in 1958 to 1968. But the word that they use is residence. So that doesn't mean that from 1915 to 1958, his father was not coming here to work in a ranch. It's just that he changed his residence. He was actually living. Back then, people would go and live in Matamoros or in Tamaulipas because that's where the ranch was, the wife was, and they would have the children there. And then they would go up north wherever there was work to different ranches just to work. And that is just a common thing all over the South Texas. So this is a case where Mr. Flores, Mr. Garza Flores, has not had an opportunity to present that evidence. And I believe that we have enough in the record to set up that there is a genuine fact that he's talking about his citizenship. And when I mention that difference, because in the statement by the government, they used to derive, and that's exactly what Judge Tipton says on his case. You're both using it like he's no different. And there is a big difference. And I hope that I make that, my point clear on that area because I see that all the time. And I've been practicing immigration law, I was born in Mexico, I have a naturalization certificate in 1987. And for the common eye that is not familiar with this, they really don't understand the difference because they both exactly look the same. But if you look at it, there's a double A, and to the U.S. I've learned to now know the difference between those. I have nothing further, Your Honor. Thank you, Judge. Mr. Schultz. Yes, Your Honor. Thank you. May it please the Court. My name is Evan Schultz, and I represent Respondent Secretary Mayorkas. If I may, let me jump in to some of the discussion that was just going on here, and maybe I can help clarify things a bit. First of all, the only question going on right now is whether or not there's citizenship based on Section 8 U.S.C. Section 1401A7. That's the former statute. That's the question. The terms that I've seen to describe that, as Opposing Counsel said, sometimes that can be called acquired citizenship. I've seen the term being used, transmitted citizenship, I've seen that in the Second Circuit. But whatever term you want to use, I think we're all in agreement that that's the statute that we're looking at here. So let me just please focus on that to start. So you don't quibble with counsel's dichotomy of acquired versus derivative, and that this case is in the acquired bucket? I'm happy to call this acquired for purposes of this argument. Are you aware that that distinction has any legal consequence for this case? Does it affect the burden of proof? I am not aware that it would affect anything, and the best authority I have for that is the Supreme Court's case in Berengi v. District Director, S. 385 U.S. 630, where it says this court has often stated that doubt should be resolved in favor of the United States and against the claimant, and it says that in the context of, quote, the privileges and benefits of citizenship, end quote. It doesn't make that distinction about the ties going to different folks. It makes clear that the tie is...that essentially the other side, the petitioner, is moving and therefore has a burden of proof. It's really...I don't think this is anything other than different ways of stating what I think we all understand, which is that somebody who is seeking this benefit has the burden to show it, and there's no doubt that that's the case here. If you could quickly...you don't need to do it right now, of course, but if you look at page 10 of the government's brief, that's the language that I think opposing counsel had focused on, where we're simply citing...where we're simply citing to the Bustamante case. We also cite to a different case, the Irocheta case there, where we make the same point that this is governed by statute. That's true for naturalization, and we say that's also true for transmission of citizenship. We say, quote, the applicable law for transmitting citizenship to a child born abroad when one parent is a citizen is the statute in effect at the time of the child's birth, end quote. That's the only point that we're making here, Your Honor. So I...with all due respect, I do think this is a bit of a red herring. So on the key issue before us, it's really whether or not there's a material question of fact on whether the father has spent 10 years of citizen...10 years of physical presence in the United States. Now it's been seven years since the Department of Homeland Security informed Petitioner that to establish his citizenship, he needs to provide more evidence. He's had seven years since 2015 when the Department of Homeland Security initially put forward its rejection in Exhibit A of government's brief. During that seven years, Petitioner has had plenty of time, plenty of opportunity to gather whatever he wants, whatever he can to meet the only standard at issue here today, which is under Section 1252, whether there is a genuine issue of material fact about the presence of the father in the United States. And instead of giving us enough information, enough evidence to make a mature, a genuine fact question, the Petitioner has provided not much, not much. What he's trying to say to this court is, let me take this not much and go over to district court. And at district court, let me do this... All right, but to be clear... So the not much is he has a certificate of baptism, which indicates that his father was baptized in Texas in 1916. You agree that he offers that?  He offers that? So, Your Honor, for as we say in the brief, we assume that the father, for purposes of this hearing, we assume that the father is a citizen. We assume that the father adopted or verified that he is the father, legitimized. The only question really that we thought about in our briefs is the physical presence of the father, Eugenio, for 10 years, enough to sufficiently meet what the statute calls for in section, former section 1401A7. So what you're talking about... When you say he offers... So you're saying he offers not much in support of his contention that his father was physically present in the United States for 10 years. You say he offers not much in support of that? Yes, Your Honor. Not much isn't the standard, though, is it? Question is whether or not we have a genuine issue of material facts sufficient to survive some re-judgment. Yes, Your Honor. I absolutely agree with that. And what I'm trying to make clear is that he has not provided enough to meet even that standard. The only way that he can go to district court to do the extra discovery that he's requesting is if he shows that there's a genuine fact issue right now, right here, today. And he cannot do that. Your Honor, I... As I understand it, he offers four different government documents, or let me be more accurate, three government documents over a 30-year period. He offers his father's application for citizenship in 1969 and an affidavit from his sister detailing essentially the chronology of his life. What does the government have to contradict that? So there's actually two other documents in his favor. Let me just flag quickly, Your Honor. There's also his draft card and there's his border crossing card, which are also government documents. So I want to make sure that we do look at everything. Thank you for that. Those were two of the ones that I was trying to refer to when I mentioned the three government documents. So, I think the baseline thing that we look at here to show that there's no citizenship is the petitioner's own admission. If you look at the government's record at page three, in 2020, the petitioner admitted that he is not a United States citizen. He did the same thing... Okay, but I'm sure you well know, since this is your work, not mine, but just from my own casual knowledge, I know that there's a weird phenomenon of a lot of people who are citizens who actually don't know it. This case would obviously be Exhibit A, at least in theory, in that. So the fact that he didn't know, you're not arguing that he's forfeited or renounced citizenship, are you?  What I'm trying to say, Your Honor, is that's our baseline. And since he's admitted that, then the question... What else do you have besides his ignorance? In response to that... I'm sorry, Your Honor? I'm sorry. Go ahead. I was just asking what else do you have besides his apparent ignorance of his citizenship status at that time? Well, what I'm trying to say, Your Honor, is that given that he admitted it, and you're saying in ignorance, maybe yes, maybe no, the question is, has he created a material fact dispute about that? And the burden is on him. So I'd like to, if we can, go through those four documents that we just mentioned very quickly, we can see what's there, and if it establishes that the father has been physically present in the United States for 10 years. And my answer is that there's not a genuine fact dispute that's established by these documents. So the first is the border crossing. That's something that they included in their transfer motion at Exhibit 50. I'm sorry, 550. It's from 1938. It talks about a single border crossing that happened on August 20th, 1938. It says that there is a border crossing card, and that's really for purposes of physical presence. That's all it says. It doesn't mention how long he was here, when he went back, how many times he crossed, none of that. So there's really not much there that one could use to say that he showed that there's a material fact question about how much time he was here. The next thing is his draft card. That's from 1941. It doesn't say anything about how much time he was in the United States. It says that he was born in La Rochita, and that he's a citizen of the USA, and that's fine and good as far as it goes. What would he have to—pardon my ignorance—what would he have to show—that's the father—what would the father have to prove to claim his own citizenship? Well, the father did actually claim his own citizenship. He did that— Right, but what's legally—pardon my ignorance, I should know this—was the father born in the United States, or did the father— The father was born in the United States, according to some of the documents. There's some conflict about that, whether he was born in the United States or not. It seems that it was accepted that he was born in the U.S. Okay, so your theory, given that he was born in the United States, baptized in the United States, and lists his citizenship as a United States in his World War II draft card, has a Texas address as of 1969, and we haven't even gotten to the sister's affidavit yet. Correct. You're asking us to suggest that despite his admitted U.S. citizenship, he did not spend 10 years in the United States by the time— What I'm saying is that Petitioner has a burden under the Summary Judgment Standard and under the statute to show that that happened, and that he hasn't shown a genuine material fact issue on that. This is simply going back to burdens of proof, Your Honor, and there's more that one might have done, potentially, and there were seven years that were around for gathering this since he first had noticed that he needed more information, and by the standard that this court looks at right now, today, what we're saying is that he hasn't met his burden to show a genuine fact dispute. Does the government agree that this is essentially a summary judgment-style burden at this stage? Yes, Your Honor, very much so, very much so. That's been clear throughout this litigation, I think. The next document we have is the Application for Citizenship by the father—Application for Citizenship Certificate, that is—and here he says he was born in Mexico, so again, there is some back and forth about that, but again, we are assuming his citizenship for purposes of this hearing today. The more relevant part for physical presence is the handwritten note that says, I go back and forth whenever necessary, presumably back and forth between the two countries, and he also writes, I have resided in the U.S. about five months in 1940. That's it. So even if we assume that residing is physical presence, that's still five months, that's not ten years. So the question is then, what else is there? And really the last document we have is the Affidavit from the aunt. There are two core problems with this affidavit. One is simply that it's not made on a relevant fact based on personal knowledge, and the second is that even if it were, it's still just a scintilla of evidence, it's just colorable, and under the summary judgment standards that Judge Ho was just discussing, that's not enough to show that there's material fact dispute. So the key issues in the affidavit really come to two or three points. Before you get to the affidavit, because I do want to talk about that, what do you make of Judge Tipton's, of his ruling, the criminal case, where as I understand it, the court concluded that the government couldn't prove the crime because there was at least a reasonable doubt that his father was in fact physically present for the requisite ten years. Based on that, that would suggest reasonable doubt is not the same thing as genuine issue of material fact, but you'll admit they're similar. As Judge Tipton pointed out there, the burdens are completely different. In the criminal case, it's the government that carries the burden of proof. In the citizenship case, it's the petitioner who carries the burden of proof. Judge Tipton's decision also made explicit that he was not deciding the citizenship issue one way or the other. He was simply noting that the government had not carried its burden. The government's theory would have to be he's not a citizen. The government can't deny citizenship by reasonable doubt, but by preponderance of the evidence.  No, not quite, Your Honor. If it ever gets to the district court, it would be the preponderance of evidence standard, but at this point, as you mentioned, Judge Ho, we are looking at the standard summary judgment standards where the petitioner has the burden to simply show a fact dispute, a material fact dispute. That's the standard that's at issue here. That's why we're talking about the evidence. Yes, Your Honor. So basically, what she says, there's no indication here that what she was getting at when her affidavit has any basis in personal knowledge. She doesn't use the word. She says, I know. For instance, when she talks about the five half siblings of the petitioner, she says, she says, quote, I know that they all obtained their citizenship through my brother Eugenio, end quote. But that's it. That's conclusory. There's no explanation how she knows that. Is it from people having told her? Well, that would be hearsay. Did she see the ceremony, for instance? Does she know it from personal observation? She simply doesn't say. And under the well-established standards for summary judgments, one case I think summarizes precisely is the little versus liquid case that we talk about, liquid, I'm sorry, little versus liquid air case that we talk about in our brief. There's inference, there's conclusory assertions, there's unsubstantiated assertions, or at best, there's a scintilla of evidence. Meaning, even if there were personal knowledge for that, all she has there is just the one single statement with nothing more. If you go further down on the same page, she goes on to say that she knows that her brother, I know, quote unquote, that my brother always worked in the fields, and that he worked all his life, quote unquote. Again, there's no discussion how she knows this. She's 15 years younger than he is. He was born in 1915. She was born some 15 years later. We don't know how she knows this. Did people tell her? It's unclear from her affidavit. She simply doesn't say the basis for her knowledge. That means that personal knowledge, which is a core aspect of Rule 56C, simply isn't met here. This Court ruled as much in the case of $92,203, which we talked about in a brief that talks about how hearsay simply isn't sufficient for summary judgment purposes. I think it's also important to point out that if you look at — So the affidavit says — the affidavit claims that this is based on personal knowledge. Your point, I take it, is she has to specify the basis of her personal knowledge? That's what we would like to see, Your Honor. I think that if you look at the — again, the little versus liquid case, these are some of the conclusory assertions, but nothing more, and that she did not make clear how she has personal knowledge. There is a good example here of a different way to do it. So if you look at this Court's precedence in the CREATE case, the CREAR case, which we cite in our brief, the question there was whether or not a company had sent out various letters or not in a litigation against a loan servicing company. And there's a very interesting paragraph that explains one way that someone might know something, and this is from pages 293 to 294. It says that one of the people in this company claimed personal knowledge based on his experience working at the law firm during the time the letters were sent and his review of the firm's business. He also attached copies of the letters to the declaration. That's one example of a way that someone might demonstrate personal knowledge. There's nothing equivalent to that in this declaration. And you're saying that was sufficient in that case? I'm sorry, Judge Carlin, I couldn't understand. Yeah, I'm sorry. This is not great communication. You're saying that that was found to be sufficient in that case? Sufficient. Correct, Your Honor. Right. Do you have any case, I mean, in a corporate type setting, it's understandable that the employee would have to explain that they're aware of the practice. Are you aware of a case that says that a family member, indeed siblings, brother, sister, we're not going to assume that they would know about the basic chronology of a brother or sister's life, absent some sort of specific articulation of that knowledge? Have we said that? I don't have a case that says it quite so clearly. But what I can point you to is a different case that we cited in our brief, which is the Rosales case, where this court said that the evidence in the affidavit was thin. And thin, this court said, was enough to show that there was a fact dispute. But there was a key difference between the affidavit issued there versus the one here. There, the affidavit was by a mother giving written testimony, giving an affidavit, it's one statement, about the birth and circumstances of her own child. So that's something where there's almost the core definition of what counts as personal knowledge, and this court called that thin but sufficient. What we have here simply isn't at that level. We don't know if it's personal knowledge. It simply doesn't say. And we're arguing that's not enough. Your Honors, I see that my time is about to expire. If there's any other questions, I'm happy to answer them. Mr. Schultz? If there's no other... Please proceed, Your Honor. No, I was just about to say you only have about 45 seconds left. And I'm happy to entertain any questions Your Honors might have. All right. Thank you. Rebuttal? Thank you, Your Honors. All right. Yes, Your Honor. Thank you very much. Your Honor, I believe that we have met our burden shown by that there is a substantial, there's a material fact about his citizenship. The government keeps on saying that this is a summary judgment case. Summary judgment cases are usually granted when somebody has had an opportunity to have discovery. In this case, what we're supposed to submit is sufficient evidence to show that it's a material issue. I believe this case has a material issue. I also believe, Judge, they're talking about a 2015 application for an N-600. Just to tell you how difficult these cases are for people. In 2015, he files an application for an N-600 because they're complicated. People don't understand immigration laws because they're complicated. Immigration denies his application saying, we have no evidence that you're a citizen. They don't check the records because the government says, I'm not even conceding he's a citizen. Well, he thought he was born in the United States, but he has a certificate of citizenship. He's dead. He was never revoked. He cannot be revoked anymore. And he says that he was born in Mexico in 1915 and his dad was a citizen. So there is no question his dad is a citizen by acquisition. Then, it's really incredible to think that somebody that comes from the border would not have placed themselves between 1915 and 1974, a period of 59 years, where there is an application for a certificate of citizenship that says that in 1969 he was already living here. His dad was from Latina, from 1898, from Brownsville, Texas. And he, putting his application, I used to go back and forth to say, by a preponderance of the evidence, I couldn't prove that if this guy was not sitting at his home watching TV, which didn't exist. Would he have been here if he only came six months out of the year? His sister would be able to testify. You know what? My brother had two families. He had a family that he already got certificates for his children, and this kid was born out of a relationship that didn't have a family. But he had to work, and they would go to work to ranches. That was common. That was common. All we are asking, this guy sat in prison for 18 months on an illegal reentry, and if he didn't believe that he had a chance, he would already be in Mexico. He's now, he came to my office the other day, I don't know what's going to happen to him if I don't get this case transferred. He can probably never be prosecuted for illegal reentry because they already found that the government cannot prove, you know, unless they find records that show that his dad lived in Russia and he was never here, or that he was not his dad, then, you know, the judge will be able to say, you know what, I was led under the wrong impression. But this case needs to be transferred, and it shouldn't be that complicated. Out of all the cases that people come with, illegal reentry cases, how many cases do people actually have a claim for citizenship? Only those ones that have actually somebody that is from the United States. I represented over 100 people, and I can tell you that I don't find those cases. I usually find them when I start asking questions. Was your dad a citizen? No. Was your grandparents? Oh, your grandparents were citizens. Okay, when were they born? Well, you know, my grandfather was born in 1800, my dad was born in 1939. You know, your dad was a citizen? No, I didn't know. He was an LPR, but nobody ever checked the rules because they don't understand the rules. Even the people that do the rules don't understand. I got border patrol agents coming to me to help them with their application for a certificate of citizenship. It is unfortunate, and I just hope that this court will see that in this case, the case is not a summary judgment. It is whether there is some material fact, and I believe that we have met our guard in Congress. Thank you very much. Thank you, General. Thank you, sir. All right, the court will take this matter under advisement.